UNITED STATES, Appellee,

v.

Specialist Four Timothy W. BURRELL,
U. S. Army, Appellant.

No. 40,699.

CM 439780.

U. S. Court of Military Appeals.

Aug. 9, 1982.

For Appellant: *Major Robert C. Rhodes* (argued); *Colonel Edward S. Adamkewicz, Jr., Captain Chuck R. Pardue* (on brief); *Captain Peter R. Huntsman.*

For Appellee: *Captain Michael E. Pfau* (argued); *Colonel R. R. Boller, Major John T. Edwards, Captain Paul K. Cascio* (on brief); *Major Ted B. Borek, Major Paul G. Thomson.*

*OPINION OF THE COURT*

COOK, Judge:

Tried by general court-martial, military judge alone, the accused was convicted, pur-

suant to his pleas, of discharging a firearm in violation of a lawful general regulation, assault with intent to commit voluntary manslaughter, and unlawfully carrying a concealed weapon, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934, respectively. The military judge sentenced the accused to a dishonorable discharge, confinement at hard labor for 3 years and 6 months, forfeiture of all pay and allowances, and reduction to private E–1. Pursuant to a pretrial agreement, the convening authority suspended that portion of the confinement in excess of 3 years and forfeiture of pay in excess of $275.00 per month for 3 years, but otherwise approved the sentence. The United States Army Court of Military Review affirmed in a short-form opinion. We granted appellant's petition for review on the following issue:

THE MILITARY JUDGE ERRED IN DENYING THE MOTION FOR DISMISSAL OF THE CHARGES AND SPECIFICATIONS BECAUSE OF A LACK OF SPEEDY TRIAL.

We disagree and affirm.

At trial, the accused raised the speedy trial issue and a stipulated chronology of events was presented by trial counsel which disclosed, in pertinent part:

19 Jan 80   Offenses committed.

20 Jan 80   Accused arrives at Silas B. Hays Hospital for treatment of broken jaw.

24 Jan 80   Accused's Company Commander tells accused that he can go anywhere he wants, but not to leave the hospital without an escort from the unit.

26 Jan 80   Attending physician of the accused determines the accused could leave the hospital for periods of time and no longer needs to remain constantly in the hospital.[1]

25 Feb 80   Accused's Company Commander repeats directions given accused on 24 Jan 80.

27 Feb 80   Charges preferred against accused.

6 Mar 80   Accused placed in pretrial confinement. Article 32 Officer appointed.

21 Mar 80   New Article 32 Officer Appointed.

26 Mar 80   First session of Art. 32 Investigation.

9 Apr 80   Defense Delay from 10–24 Apr 80. (14 days)[2]

24 Apr 80   Article 32 resumes and is completed.

28 Apr 80   Article 32 Investigator's Report received by the Staff Judge Advocate Office.

16 May 80   Charges referred to General Court Martial.

19 May 80   Defense Delay for psychiatric exam and for consideration of Offer of Pretrial Agreement. (9 days).

27 May 80   Trial on the merits.

Our consideration of the granted issue necessarily begins with our decision in *Unit-*

---

1.  While there was no evidence as to the reasons for retaining the accused in the hospital during this time, in trial defense counsel's Motion to Dismiss for Lack of Speedy Trial, he asserted:

> According to the attending physician, if no restriction had been imposed, SP4 BURRELL would probably have been given day passes to the company only returning for special meals at the hospital.

This must be considered in respect to the commander's testimony that he would have put the accused in pretrial confinement on 23–24 January if it had not been for his hospitalization because he considered the accused a threat to others.

2.  Although the parties stipulated that the delay from 10 to 24 April 1980 was at the request of the defense, the trial counsel agreed that a government witness did not arrive until April 17 and, in effect, accepted responsibility for seven of these days. *See United States v. Cole*, 3 M.J. 220 (C.M.A.1977).

ed States v. Burton, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), in which we held that when the accused is in pretrial confinement for three months without the trial beginning, a presumption of an Article 10, UCMJ, 10 U.S.C. § 810, violation will arise which will "place a heavy burden on the Government to show diligence" or the charge will be dismissed. Id. at 118, 44 C.M.R. at 172. Later, in United States v. Driver, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974), we changed the "three months" to 90 days in order to facilitate computation of time giving rise to the presumption of prejudice.

Here, the accused was in pretrial confinement for only 63 days after deduction for defense-requested delays.[3] Hence, unless the time the accused spent in the hospital is added, the Burton presumption does not apply. In this regard, our decision in United States v. Schilf, 1 M.J. 251 (C.M.A.1976), is pertinent for consideration. There, the United States Air Force Court of Military Review found that Schilf had been "restricted to the narrow confines of his squadron area" under circumstances "including ... [a requirement for] hourly sign-in[s]." Id. at 252 n.2. The Air Force Court concluded that the nature of the restriction made it tantamount to confinement and added those days to the 70 days actually spent in pretrial confinement.[4] We held that the Burton presumption applied and, since it was unrebutted, the charges were dismissed. More recently, in United States v. Walls, 9 M.J. 88 (C.M.A.1980), the accused was retained in full duty status, but his commanding officer withdrew his pass privileges and required him to obtain permission whenever he wished to leave the post. On appeal to this Court, Walls contended

"that the withdrawal of his pass privileges ... constituted a restriction of such severity as to activate the Burton presumption of prejudicial delay." Id. at 89 (footnote omitted).[5] We rejected such a contention and held "that withdrawal of a pass alone" does not constitute "an arrest within the meaning of Article 10." Id. at 90. We, therefore, were required to examine the record for specific prejudice since the Burton presumption did not apply.

■ With the law in such a posture, we turn to the facts of the instant case. When the accused was visited by his commander in the hospital on January 24, 1980, the commander told him of the allegations against him and of the pending investigation in accordance with Article 32, UCMJ, 10 U.S.C. § 832. He also informed him that "he was to remain in the hospital for treatment and that if he wished to leave the hospital he would call the unit and get an NCO escort to take him wherever he had to go." There were no limits as to where or when the accused could go. The reason for requiring a noncommissioned officer escort was the commander's fears "about any confrontation that might arise between" the accused and the victim, or their friends. The commander knew that "some weapons were floating free," and he did not want any further incidents to occur. Later, on February 24, 1980, the commander repeated his order to the accused.[6] At no time did the commander tell the accused or anyone else that he was restricted. Apparently during this time the accused left the hospital—under escort—to go to the bank, a dental appointment, the post exchange, and to see his attorney. In denying the motion to dismiss the charges for lack of speedy trial, the military judge made these findings:

---

3. The accused was in pretrial confinement for a total of 79 days. However, there were two defense-requested delays which were properly deducted from this total. But see n.2, supra.

4. There were also findings of "subterfuge" and "unconscionably delusive tactics of the chief of military justice" which impacted on the computation of pretrial confinement time in Schilf. See 1 M.J. 251, 252 n.2 and 253 n.5. Hence, the decision may not be of general application.

5. His contention was based on our decisions in United States v. Powell, 2 M.J. 6 (C.M.A.1976), and United States v. Nelson, 5 M.J. 189 (C.M.A. 1978).

6. There were reports, denied at trial by the accused, that the accused had been seen in the barracks area unescorted, and that on one occasion, he had been off post.

First of all I find the accused was restricted on the 24th of January 1980 but I do not find that restriction to be the functional equivalent of confinement. A hospital is simply not a jail. I do not find the specific onerous requirements such as hourly sign-in or restriction to a limited area or other requirements which impelled the courts to find a functional equivalent of confinement in other cases present in this case. Despite the company commanders testimony that he would have confined the accused he did not so I find that while the accused was restricted in such a manner as to trigger the government requirement for accountability under Article 10 of the Code I do not find that *Burton* presumption arose in this case because I find the accused was confined 79 days ago on the 6th of March. Applying what have been termed the non-*Burton* speedy trial standards to the period from the 24th of January of this year until the present date I find the government has moved with reasonable diligence in bringing the case to trial. I do not find any oppressive design or delay nor do I find any specific prejudice to the accused from the delay and for those reasons the motion to dismiss for lack of speedy trial is denied.

We agree with the military judge. The conditions of accused's "restriction" to the hospital were not such as to constitute the equivalent of arrest or confinement. *United States v. Walls* and *United States v. Schilf*, both *supra*; *United States v. Powell*, 2 M.J. 6 (C.M.A.1976). In this regard, we consider the fact that accused was not limited either in time or place when he chose to leave the hospital, the only condition being that he be escorted—a fact which, in part, was designed for his own protection. Under these circumstances, we agree with the military judge that "[a] hospital is simply not a jail." Therefore, we find no facts that would bring the *Burton* presumption of prejudice into effect.

However, that determination does not conclude our consideration since there remains the applicability of Article 10 to the pretrial processing of the accused's case. This article provides, in pertinent part:

When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.

Article 10, UCMJ, 10 U.S.C. § 810.

■ While the requirements of Article 10 are more rigorous than the Sixth Amendment to the United States Constitution, it becomes operative only after arrest or confinement. *United States v. Nelson*, 5 M.J. 189 (C.M.A.1978); *United States v. Powell, supra; United States v. Marshall*, 22 U.S.C. M.A. 431, 47 C.M.R. 409 (1973). Recognizing that the lack of pretrial confinement "does not in any way 'lessen the need for a speedy trial,'" *Kidd v. United States*, 1 M.J. 302 (C.M.A.1975), our primary time for consideration is that after March 6, 1980, when the accused was placed in pretrial confinement. *United States v. Walls, supra* at 90, quoting *United States v. Nelson, supra* at 191 (Cook, J., concurring). The touch stone for our analysis "is not constant motion" but, instead, "reasonable diligence in bringing the charges to trial." *United States v. Tibbs*, 15 U.S.C.M.A. 350, 353, 35 C.M.R. 322, 325 (1965). "Brief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive." *Id., citing United States v. Williams*, 12 U.S.C.M.A. 81, 83, 30 C.M.R. 81, 83 (1961).

■ Examining the dates in the stipulated chronology set forth above, we eliminate from our consideration the time between January 20–26, 1980, when the accused was undergoing treatment for a broken jaw. On January 24, the accused's commander informed him of "certain allegations ... [they] were investigating and ... of the Article 32 Investigation that would follow, and charges that would come out of that." During the time following the incident, there was an on-going investigation by the Criminal Investigation Division (CID) as to possible drug involvement by the parties to the incident. Because it was subsequently determined that the price for cooperation of

the informant involved was too high, the investigation was discontinued in late February. On February 27, charges were preferred. The delay in starting the Article 32 investigation, while longer than would normally be expected, was explained by the perceived need to select a second, more experienced, investigating officer. After the appointment of the new investigating officer, the pretrial processes proceeded with reasonable dispatch: "not fast, [but] ... not so slow as to indicate either gross negligence or callous indifference." *United States v. Burton, supra* at 116, 44 C.M.R. at 170. Further, at no time did the accused formally demand trial.

The military judge found that "the government moved with reasonable diligence" and that there was no "oppressive design or delay" nor was there "any specific prejudice to the accused from the delay." Our review of the record convinces us that he was correct. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. MacDonald,* —— U.S. ——, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.