UNITED STATES, Appellee

v.

Rory J. SCHUBER, Airman First Class
U.S. Air Force, Appellant

No. 11-6002

CCA Misc. Dkt. No. 2010-14

United States Court of Appeals for the Armed Forces

Argued March 30, 2011

Decided July 6, 2011

BAKER, J., delivered the opinion of the Court, in which STUCKY
and RYAN, JJ., joined.  ERDMANN, J., filed a separate opinion
dissenting in part and concurring in the result, in which
EFFRON, C.J., joined.

Counsel

For Appellant:  Major Reggie D. Yager (argued); Colonel Eric N.
Eklund (on brief); Lieutenant Colonel Gail E. Crawford.

For Appellee:  Major Naomi N. Porterfield (argued); Colonel Don
M. Christensen and Gerald R. Bruce, Esq. (on brief); Captain
Charles G. Warren.

Military Judge:  Carl L. Reed II

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge BAKER delivered the opinion of the Court.

This case arises from an interlocutory appeal. Appellant was arraigned in a general court-martial convened at Travis Air Force Base, California, on two specifications of wrongful use of methamphetamine and marijuana on divers occasions, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2006). Prior to entering pleas, Appellant, through counsel, moved to dismiss the charge and specifications alleging a violation of his right to a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810 (2006). The military judge granted the motion, dismissing the charges and specifications with prejudice.

On review, the United States Air Force Court of Criminal Appeals reversed, concluding that the Government acted with reasonable diligence. United States v. Schuber, Misc. Dkt. No. 2010-14, 2010 CCA LEXIS 446, at *16 (A.F. Ct. Crim. App. Dec. 2, 2010) (unpublished).

We granted review of the following assigned issue:

WHETHER THE COURT OF CRIMINAL APPEALS ERRED BY
REVERSING THE MILITARY JUDGE AND FINDING THE
GOVERNMENT MET ITS BURDEN UNDER ARTICLE 10, UCMJ.

In addition, we specified the following issue:

WHETHER ARTICLE 10, UCMJ, SHOULD HAVE BEEN APPLIED BY
THE MILITARY JUDGE AND THE COURT OF CRIMINAL APPEALS
WHEN THE ACCUSED HAD BEEN RELEASED FROM CONFINEMENT
AFTER 71 DAYS, ALLOWED TO RETURN HOME ON LEAVE FOR 3
DAYS, AND WHEN HE RETURNED, WAS ONLY SUBJECT TO BASE

2

RESTRICTION, A RESTRICTION THAT WAS NOT TANTAMOUNT TO
CONFINEMENT.

For the reasons set forth below, we conclude that

Appellant's post-confinement restriction did not amount to

an arrest under Article 10, UCMJ.  We further conclude that

Appellant's right to a speedy trial under Article 10, UCMJ,

was not violated in this case.  Therefore, we affirm the

Air Force Court of Criminal Appeals.

## I.  BACKGROUND

As part of the Drug Demand Reduction Program, Appellant was

randomly selected to provide a urinalysis sample on December 1,

2009.  When the sample tested positive for the presence of

amphetamine and methamphetamine, security forces initiated an

investigation.  Appellant voluntarily provided a second sample

on December 21, 2009, which also tested positive.  Security

forces concluded their investigation on January 26, 2010, after

Appellant provided two additional samples and both tested

positive.

On February 10, 2010, Appellant was placed in pretrial

confinement in a civilian facility pending court-martial.[1]

Before entering confinement, however, Appellant provided two

additional samples, both of which tested positive on February

---

[1] Appellant was initially placed in a civilian pretrial
confinement facility for the first day of pretrial confinement
because Travis Air Force Base does not have a local military
confinement facility.

26, 2010.  The next day, February 11, 2010, Appellant was transferred to a military facility for pretrial confinement.  A pretrial confinement hearing was conducted resulting in Appellant's continued pretrial confinement.  Charges were preferred against Appellant on March 10, 2010.

Appellant made his first discovery request on March 17, 2010, and included a request for a speedy trial.  The next day, an Article 32, UCMJ, 10 U.S.C. § 832 (2006), investigating officer (IO) was appointed.  On March 29, 2010, Appellant made a discovery request in preparation for the upcoming Article 32, UCMJ, hearing and made another demand for a speedy trial.  The Government responded to this request the next day, which was also the day the Article 32, UCMJ, hearing was held.  On March 31, 2010, the IO requested additional evidence, prompting another discovery request on the Government by Appellant, and a response by the Government on the same day.  The Article 32, UCMJ, report was then processed from April 7, 2010, through April 15, 2010, at which time the charges were forwarded.  On April 20, 2010, Appellant, through counsel, requested reconsideration of his pretrial confinement.  The next day, April 21, 2010, due to the death of his grandfather, Appellant requested an expedited review of his request.  In addition, that same day defense counsel made a third discovery request, which also included a request for a speedy trial.

On April 22, 2010, Appellant's request for reconsideration of his pretrial confinement was granted, though it was too late for Appellant to attend his grandfather's funeral, and Appellant was ordered to remain within the confines of the base. However, on April 23, 2010, Appellant was given a three-day pass to travel to his hometown to grieve with his family. The restriction orders required Appellant not to deviate from his travel schedule, to provide a urine sample the day after he returned to base, and to provide weekly urine samples thereafter until trial. He subsequently traveled to his hometown and returned to base without incident and without escorts.

On April 15, 2010, the charge and its two specifications were forwarded to the convening authority. The charge was referred against Appellant on April 26, 2010, and served on him two days later. On May 2, 2010, Appellant made a fourth request for speedy trial in the context of a discovery request. On May 4, 2010, the military judge was detailed to the case. On May 10, 2010, the Government provided its first response to Appellant's outstanding discovery requests. At the docketing conference held on May 3, 2010, the trial date was set for June 28, 2010. The Government requested that date based on the availability of the assigned expert witness from Brooks Air Force Drug Testing Laboratory (AFDTL), where Appellant's urinalysis samples were apparently processed. However,

realizing that the 120-day speedy trial time frame under Rule for Courts-Martial (R.C.M.) 707 would expire on June 9, 2010, the Government requested an accelerated arraignment.

Appellant was arraigned on June 2, 2010, at which time he and the Government arranged for further discovery. On June 11 and 24, 2010, Appellant made his fifth and sixth requests for a speedy trial in the context of these discovery requests.

On June 21, 2010, Appellant, through counsel, moved to dismiss the charges for denial of a speedy trial based on the 138 days that had transpired between the first day of Appellant's pretrial confinement to the first day of trial. At trial on June 28, 2010, the military judge granted Appellant's motion to dismiss.

The military judge concluded that Appellant's right to a speedy trial under Article 10, UCMJ, was violated, stating:

> it took 75 days to refer the most basic of crimes and they then arbitrarily elected to use a single expert's lack of availability as an excuse for not taking this case to trial for another sixty-three days. Given the chronology of this case, I find the government's actions to be negligent.

Although the CCA agreed that "[t]he government's prosecution of this case was not exemplary," the CCA disagreed with the conclusions of the military judge. Schuber, 2010 CCA LEXIS 446, at *11-*12. The CCA concluded that the military judge failed "to give credence to or even discuss the

government's proffered explanation" in requesting a later trial date in light of the unsettled nature of the case law regarding confrontation of expert witnesses. Id. at *8. The CCA also questioned the sincerity of Appellant's speedy trial requests, stating that the requests were submitted "as part of much larger requests for discovery," and noting that Appellant made no such request to the trial judge. Id. at *13-*14.

## II. DISCUSSION

Article 10, UCMJ, provides:

When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.

Emphasis added. "While the requirements of Article 10[, UCMJ,] are more rigorous than the Sixth Amendment to the United States Constitution, it becomes operative only after arrest or confinement." United States v. Burrell, 13 M.J. 437, 440 (C.M.A. 1982) (emphasis added). The parties agree that Appellant was placed in pretrial confinement for seventy-one days; however, they dispute whether Appellant's subsequent restriction of sixty-seven days amounted to "arrest" for the purposes of Article 10, UCMJ. As a result, the parties disagree on whether Article 10, UCMJ, should be applied to seventy-one or one-hundred thirty-eight days of "arrest or confinement." Thus, before addressing the granted issue of whether Appellant's

7

Article 10, UCMJ, speedy trial rights were denied, we must necessarily address the specified issue of whether the Article 10, UCMJ, analysis should include Appellant's sixty-seven-day base restriction, in which category we include Appellant's three-day pass to grieve with his family.

### A.  Article 10, UCMJ, "Arrest"

Appellant contends that any form of restriction triggers Article 10, UCMJ, protection and that, in reference to the last clause of the Article, such protection "only terminate[s] upon trial or release from restraint and dismissal of charges."  The Government responds that "[a]rrest and restriction are not one in the same" and that an arrest status for the purposes of Article 10, UCMJ, must be determined based on the facts of each case.  The parties further appeal to Article 9, UCMJ, § 10 U.S.C. 809 (2006), case law, and legislative history in support of their positions.  There are indeed arguments on both sides of the issue.

Article 9(a), UCMJ, defines "[a]rrest" as "the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits."  Under this definition, any limitation, including base restriction, could certainly qualify as arrest.  Indeed, some early case law holds as much.  See, e.g., United States v. Williams, 16 C.M.A. 589, 592-93, 37 C.M.R. 209, 212-13 (1967)

(holding that restricting the appellant to his company area fell within the definition of "arrest," despite being labeled as "restriction"); United States v. Weisenmuller, 17 C.M.A. 636, 637-40, 38 C.M.R. 434, 435-38 (1968) (holding that the accused's restriction to the barrack's cubicle, the head, laundry room, necessity store, mess hall, barber shop, working area, and direct routes to these locations, as well as almost hourly sign-in requirements, constituted "arrest"); United States v. Powell, 2 M.J. 6, 7 (C.M.A. 1976) (holding that withdrawing the appellant's pass privileges, where that privilege was provided as a matter of course and was only withdrawn where an individual was charged with misconduct, had "the same substantive effect of restricting the appellant"); United States v. Nelson, 5 M.J. 189, 190-91 (C.M.A. 1978) (clarifying that the circumstances of Powell constituted an "arrest," subjecting the case to Article 10, UCMJ).

However, later case law recognized that not every geographic restriction amounts to arrest. "[T]he two forms of restraint, arrest and restriction, are not per se equivalent for the purpose of assessing the applicability of Article 10." United States v. Walls, 9 M.J. 88, 88-90 (C.M.A. 1980) (holding that the withdrawal of an appellant's pass privileges alone was insufficient to constitute arrest where an appellant remained on full-duty status and the barracks to which he was restrained

included a variety of amenities); see also Burrell, 13 M.J. at 439-40 (holding that an appellant's orders to remain in the hospital for treatment and to obtain an escort when he chose to leave, without time or place limitations, and partly for his own protection, did not constitute "arrest" or "confinement").

The distinctions and variants between arrest and restriction recognized through case law are amplified and reflected in the Rules for Courts-Martial. For example, R.C.M. 304 distinguishes between arrest and "restriction in lieu of arrest," which it defines in the following manner:

> Restriction in lieu of arrest is the restraint of a person by oral or written orders directing the person to remain within specified limits; a restricted person shall, unless otherwise directed, perform full military duties while restricted.

R.C.M. 304(a)(2). The Discussion proceeds to contrast restriction in lieu of arrest with arrest:

> Restriction in lieu of arrest is a less severe restraint on liberty than is arrest. Arrest includes suspension from performing full military duties and the limits of arrest are normally narrower than those of restriction in lieu of arrest. The actual nature of the restraint imposed, and not the characterization of it by the officer imposing it, will determine whether it is technically an arrest or restriction in lieu of arrest.

R.C.M. 304(a) Discussion. Articles 9 and 10, UCMJ, do not preclude such a reading, nor have the parties either challenged R.C.M. 304 or asked us to overrule Walls, and its progeny. Indeed, the legislative history to Article 10, UCMJ, supports

the Rules for Courts-Martial's more nuanced treatment of the

distinctions between restriction and arrest. These distinctions

take their root in the historical distinctions found in the

Articles of War between open and closed arrest. Indeed, the

legislative history reflects the fact that military practice has

long distinguished between different forms of arrest,

restriction, and confinement, a practice that is now

incorporated, albeit in more clearly distinguished gradations,

in R.C.M. 304 and case law under Articles 9 and 10, UCMJ.

Article 10, UCMJ, traces its origins to the Articles of War

69 and 70. H. Rep. No. 81-491, at 13 (1949); S. Rep. No. 81-

486, at 10 (1949). Article of War 70 required the release of a

prisoner not provided with timely notice of the charges against

him.[2]

---

[2] This Article was the result of the prolonged confinement of
Brigadier General (Brig. Gen.) Charles P. Stone without notice
of the charges against him. His confinement followed the defeat
of Union forces under his general command in the Civil War
Battle of Ball's Bluff. 2 Thomas Yoseloff, Battles and Leaders
of the Civil War 123-34 (1956). Brig. Gen. Stone was arrested
and confined for 188 days without trial at Fort Lafayette. S.
Rep. No. 64-130, at 50, Appendix Revision of the Articles of
War, Hearing Before the Subcomm. on Military Affairs, 64th Cong.
(1916) (statement of Brig. Gen. Enoch H. Crowder, United States
Army) [hereinafter Appendix to S. Rep. No. 64-130, statement of
Brig. Gen. Crowder]. Having been advised of Brig. Gen. Stone's
"protracted arrest and confinement," Congress inserted Article
of War 1, which was the basis for Article of War 70 of the 1916
and 1920 Articles of War. Id.

United States v. Schuber, No. 11-6002/AF

Article of War 69 of the Articles of War of 1920[3] outlined the circumstances of arrest and confinement:

> Any person subject to military law charged with crime or with a serious offense under these articles shall be placed in confinement or in arrest as the circumstances may require; but when charged with a minor offense only such person shall not ordinarily be placed in confinement. Any person placed in arrest under the provisions of this article shall thereby be restricted to his barracks, quarters, or tent, unless such limits shall be enlarged by proper authority.

The Articles of War 20 (Government Printing Office 1920). In addition, an arrested officer was deprived of his sword. Appendix to S. Rep. No. 64-130, statement of Brig. Gen. Crowder at 74.

However, as the legislation reflects, in practice, arrest under Article of War 69 was meted out in a manner akin to the

---

[3] Article of War 69 of the Articles of War of 1920 consolidated Articles of War 65 (arrest of officers) and 66 (arrest of enlisted soldiers) of the 1874 Articles of War. Appendix to S. Rep. No. 64-130, statement of Brig. Gen. Crowder, at 73-74. Article of War 65 stated:

> Officers charged with crime shall be arrested and confined in their barracks, quarters, or tents, and deprived of their swords by the commanding officer.

Article of War 65 (1874), reprinted in The Military Laws of the United States 1001 (John Biddle Porter ed., 4th ed. 1901) (Government Printing Office 1911); William Winthrop, 1 Military Law 137 (1886). Article 66 stated:

> Soldiers charged with crimes shall be confined until tried by court-martial, or released by proper authority.

Article of War 66 (1874), reprinted in The Military Laws of the United States, supra at 1001; 1 Winthrop, supra at 157.

distinctions reflected in the current Rules for Courts-Martial. Nonetheless, the language of Article of War 69 remained virtually unchanged from that of its predecessors despite the fact that "in a large number of cases no arrest [was] imposed at all" and in other cases servicemembers were placed on restriction commonly referred to as "open arrest." Id. Thus, it appears that the 1920 Articles of War permitted the commander to exercise discretion under Article of War 69 to impose confinement, arrest, "open arrest," or no arrest at all. Id.[4]

Thus, the legislative history to Article 10, UCMJ, and its predecessors recognized and incorporated distinctions between arrest and restriction in lieu of arrest. These distinctions are also reflected in R.C.M. 304, which is also consistent with the legislative history discussed above. First, an arrest historically involved confinement to barracks, quarters, or tent, in short one's military living space, however defined. Second, an arrest historically required the surrender of an officer's sword, signifying the suspension of command authority and the performance of military duties. See 1 Winthrop, supra note 3, at 140. Finally, there are historical examples of non-arrest restriction permitted under Articles of War 60 and 70,

---

[4] There also existed a practice of constructive release from arrest when an officer was returned to duty at his own request to go into an engagement with his regiment, requiring re-arrest at the close of the engagement. 1 Winthrop, supra note 3, at 149.

including the imposition of "open arrest," but certainly including the imposition of no arrest at all. As a result, consistent with Walls and R.C.M. 304, we hold that restriction and arrest are not conterminous. Rather, as outlined in the Rules for Courts-Martial, there are gradations of restriction. Whether a particular restriction amounts to arrest for the purposes of Article 10, UCMJ, will depend on a contextual analysis akin to that applied to "close arrest," including consideration of such factors as the geographic limits of constraint, the extent of sign-in requirements, whether restriction is performed with or without escort, and whether regular military duties are performed.

In this case, Appellant was restricted to base rather than to quarters. Although he was required to provide weekly urine samples, he was permitted to avail himself of all usual base activities. He was also given a three-day pass to grieve with his family upon the death of his grandfather. He was not placed under guard or escort during his base restriction or travel. Nor did the restriction orders suspend Appellant from performing full, meaning normal, military duties.[5] Appellant has not demonstrated otherwise. R.C.M. 304(a)(2) ("[A] restricted person [in lieu of arrest], unless otherwise directed,

---

[5] Appellant filed a motion to attach additional documents, including the restriction orders. In the context of this case, we grant Appellant's motion.

perform[s] full military duties while restricted."). Thus, we conclude that in this case Appellant was subject to restriction not tantamount to arrest during that period following his seventy-one days in pretrial confinement.

Regardless of the analysis regarding the specified issue, Appellant argues that the time spent on restriction "counts" for Article 10, UCMJ, purposes because Article 10 UCMJ, can only be suspended either by the commencement of trial or dismissal of the charges. That did not occur in this case until Appellant was brought to trial 138 days after his initial pretrial confinement. We disagree.

The right to a speedy trial is expressly guaranteed by R.C.M. 707 and the Sixth Amendment. Although Article 10, UCMJ, is generally directed toward the advent of a speedy trial, it is specifically addressed to a particular harm, namely causing an accused to languish in confinement or arrest without knowing the charges against him and without bail. See United States v. Mizgala, 61 M.J. 122, 124 (C.A.A.F. 2005). Therefore, if the condition precedent is addressed -- the accused is no longer confined without knowing the charges of which he is accused and without opportunity for bail -- the purpose of Article 10, UCMJ, is vindicated. He is not General Stone. In this case, Appellant's placement on restriction not amounting to arrest removed the particular harm Article 10, UCMJ, was intended to

15

address.  It did not remove Appellant's right to a speedy trial thereafter vindicated through application of R.C.M. 707 and the Sixth Amendment.

Therefore, we conclude that Appellant's restriction did not amount to an arrest under Article 10, UCMJ, and that for the purposes of Article 10, UCMJ, he was subject to seventy-one days of "arrest or confinement."

B.  Did Appellant's Confinement Violate Article 10, UCMJ

Having addressed Appellant's sixty-seven days of base restriction and travel, and concluding that they do not trigger an Article 10, UCMJ, analysis, we now consider whether the Government met its burden under Article 10, UCMJ, with respect to the seventy-one days Appellant was in pretrial confinement.

"This Court reviews de novo the question of whether [Appellant] was denied his rights to a speedy trial under Article 10, UCMJ, as a matter of law and we are . . . bound by the facts as found by the military judge unless those facts are clearly erroneous."  United States v. Cossio, 64 M.J. 254, 256 (C.A.A.F. 2007).  "In reviewing claims of a denial of a speedy trial under Article 10, UCMJ," this Court has interpreted "immediate steps" to mean "not . . . constant motion, but reasonable diligence in bringing the charges to trial."  Id. (quoting Mizgala, 61 M.J. at 127) (quotation marks omitted). Thus, the Government must demonstrate reasonable diligence in

16

proceeding toward trial during Appellant's pretrial confinement. However, "[b]rief inactivity is not fatal to an otherwise active, diligent prosecution." Id. (quoting United States v. Tibbs, 15 C.M.A. 350, 353, 35 C.M.R. 322, 325 (1965)).

Although Article 10, UCMJ, creates a more stringent speedy trial standard than a Sixth Amendment analysis, we analyze alleged Article 10, UCMJ, violations using the four-factor structure from Barker v. Wingo, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) whether Appellant made a demand for speedy trial; and (4) prejudice to Appellant. Cossio, 64 M.J. at 256; Mizgala, 61 M.J. at 129. "The first factor under the Barker analysis . . . is to some extent a triggering mechanism, and unless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, there is no necessity for inquiry into the other factors that go into the balance." Cossio, 64 M.J. at 257 (quoting United States v. Smith, 94 F.3d 204, 208-09 (6th Cir. 1996) (quotation marks omitted). That is the circumstance here.

The initial question is therefore whether the seventy-one days in which Appellant was in pretrial confinement was facially unreasonable in the context of this case. Certainly, the prosecution of this case was less than commendable. This is a random sample urinalysis case, which both parties generally

17

agree to be a straightforward class of cases.  Even so, the Government did not prefer the charges, initiate an Article 32, UCMJ, investigation, forward the charges, or respond to Appellant's first three discovery requests, which included demands for a speedy trial, in a timely manner.  However, the test is reasonable diligence, not textbook prosecution.

Ultimately, an analysis of the first factor is not meant to be a Barker analysis within a Barker analysis.  However, Barker itself suggests that circumstances that are appropriate to consider under the first factor include the seriousness of the offense, the complexity of the case, and the availability of proof.  Barker, 407 U.S. at 530-31 & n.31.  Whether the amount of time is facially unreasonable in an Article 10, UCMJ, context also depends on other factors specific to the purposes of Article 10, UCMJ, which is to prevent an accused from languishing in prison without notice of the charges and without an opportunity for bail.  These additional circumstances include whether Appellant was informed of the accusations against him, whether the Government complied with procedures relating to pretrial confinement, and whether the Government was responsive to requests for reconsideration of pretrial confinement.

On the one hand, Appellant was placed in pretrial confinement based on a straightforward accusation of drug use, supported by four positive samples.  On the other hand, evidence

consisting of the final two positive samples was not reported until fifteen days into pretrial confinement. In addition, this became a contested case requiring additional discovery and the services of an expert witness. Indeed, there was ongoing discovery throughout the seventy-one days. In addition, Appellant was informed of the accusations against him as early as his pretrial confinement hearing, the second day of confinement. Moreover, absent any complaint by Appellant, and under the presumption of regularity, we presume the Government complied with pretrial confinement procedures, including a twenty-four-hour report to the commander, a forty-eight-hour probable cause determination, the commander's seventy-two-hour memorandum, and a seven-day review. See R.C.M. 305(h)-(i). Furthermore, the Government responded within two days of Appellant's initial request for reconsideration of pretrial confinement and within one day of Appellant's expedited request for reconsideration of pretrial confinement. Having reviewed the circumstances of this case, we conclude that the period of seventy-one days was not facially unreasonable under Article 10, UCMJ, rendering a review of the remaining Barker factors unnecessary.

Therefore, the lower court did not err in reversing the trial court decision.

III.  CONCLUSION

For the foregoing reasons, the decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Schuber, No. 11-6002/AF

ERDMANN, Judge, with whom EFFRON, Chief Judge, joins (dissenting in part and concurring in the result):

This court reviews whether an accused received a speedy trial "de novo as a legal question, giving substantial deference to a military judge's findings of fact that will be reversed only if they are clearly erroneous." United States v. Mizgala, 61 M.J. 122, 127 (C.A.A.F. 2005). This case presents two issues: whether Schuber's base restriction constituted "arrest" for purposes of an Article 10, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 810 (2006), speedy trial motion; and whether the period of delay resulted in a violation of Article 10, UCMJ. While I would hold that Schuber's restriction to base constituted "arrest" as that term is defined in Article 9, UCMJ, 10 U.S.C. § 809 (2006), I do not believe that Schuber suffered prejudice based on the delay. In balancing the Barker v. Wingo, 407 U.S. 514 (1972), factors, I would not find an Article 10, UCMJ, violation. Accordingly, while I respectfully dissent from the majority's decision as to the meaning of "arrest" for purposes of Article 10, I concur in the result as to the Article 10 violation.

## Whether Schuber's Restriction Constituted "Arrest" As That Term is Defined in Article 9, UCMJ

In calculating the time period for speedy trial purposes, the military judge included both the period that Schuber was in

pretrial confinement and the period he was subject to base restriction.  In reviewing the military judge's speedy trial determination, the United States Air Force Court of Criminal Appeals also included both time periods.[1]  "A military judge is presumed to know and apply the law correctly."  United States v. Raya, 45 M.J. 251, 253 (C.A.A.F. 1996).

Article 10 is implicated when a "person subject to this chapter is placed in arrest or confinement prior to trial."  There is no dispute that the seventy-one days Schuber spent in pretrial confinement is appropriate for consideration under Article 10.  The issue in contention is whether the sixty-seven additional days that Schuber was restricted to base constitute "arrest" as that term is defined in the UCMJ.  The only definition of "arrest" in the UCMJ is found in Article 9:  "the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits."  Article 9, UCMJ.  This court uses well-established principles of statutory construction to construe provisions in the Manual for Courts-Martial.  United States v. Lewis, 65 M.J. 85, 88 (C.A.A.F. 2007).  "The plain language will control,

---

[1] The Court of Criminal Appeals noted that it would follow the decision in United States v. Munkus, 15 M.J. 1013 (A.F.C.M.R. 1983), where the Air Force Court of Military Review included both the period of confinement and the period of base restriction in analyzing an Article 10 speedy trial claim.

unless use of the plain language would lead to an absurd result."  Id.

The majority notes that while this court has found that some restrictions constitute arrest, others do not.  United States v. Schuber, __ M.J. __ (8-10) (C.A.A.F. 2011).  The majority then examines the legislative history of Article 10 and Rule for Courts-Martial (R.C.M.) 304 and the "more nuanced treatment of the distinctions between restriction and arrest."  Id. at __ (10-11).  What is not examined is the clear language found in the definition of "arrest" in Article 9.  Despite that definition, the majority concludes that:

> [w]hether a particular restriction amounts to arrest for the purposes of Article 10, UCMJ, will depend on a contextual analysis akin to that applied to "close arrest," including consideration of such factors as the geographic limits of constraint, the extent of sign-in requirements, whether restriction is performed with or without escort, and whether regular duties are performed.

Id. at __ (14).

As the language of Articles 9 and 10 are clear and unambiguous, I do not believe it necessary to delve into either a "close arrest" contextual analysis or the legislative history of the term "arrest."  Schuber was restricted to base and ordered to provide weekly urine samples.  Clearly he was "[restrained] . . . by an order, not imposed as punishment for an offense, directing him to remain within certain specified

limits."[2] Article 9, UCMJ. I would find that the military judge and the Court of Criminal Appeals properly included the time Schuber was restricted to base in calculating the time period for speedy trial purposes.

## Article 10 Speedy Trial Violation

"The test for assessing an alleged violation of Article 10 is whether the Government has acted with 'reasonable diligence' in proceeding to trial." United States v. Birge, 52 M.J. 209, 211 (C.A.A.F. 1999). "Short periods of inactivity are not fatal to an otherwise active prosecution." Mizgala, 61 M.J. at 127. The military judge issued detailed findings of fact and conclusions of law in finding an Article 10 speedy trial violation. In his conclusions of law, the military judge balanced the four factors laid out by the Supreme Court in Barker, 407 U.S. at 530, to evaluate violations of a defendant's speedy trial right. While he did not find a Sixth Amendment speedy trial violation, he did find an Article 10 violation.

---

[2] Even if we were to assume that the plain language of Article 9 was ambiguous as to the definition of arrest, the majority's analysis requires an evaluation of whether regular duties are performed. Schuber, __ M.J. at __ (9) (relying on United States v. Walls, 9 M.J. 88, 89 (C.M.A. 1980), wherein "appellant's commanding officer maintained the appellant in a full-duty status, but withdrew his pass privileges"). While the majority notes that "the restriction orders [did not] suspend Appellant from performing full, meaning normal, military duties," the record is silent as to whether Schuber did indeed resume his regular military duties. Id. at __ (14).

We have consistently held that:

> Article 10 creates a more exacting speedy trial demand than does the Sixth Amendment. . . . While the full scope of this "more exacting" Article 10 right has not been precisely defined by this court, it cannot be "more exacting" and at the same time be "consistent" with Sixth Amendment protections.

Mizgala, 61 M.J. at 124-25 (citations omitted). We have noted that while "Sixth Amendment speedy trial standards cannot dictate whether there has been an Article 10 violation, the factors from Barker v. Wingo are an apt structure for examining the facts and circumstances surrounding an alleged Article 10 violation." Id. at 127. As we discussed in Mizgala, the four Barker factors are: (1) the length of delay; (2) the reasons for the delay; (3) whether appellant made a demand for a speedy trial; and (4) prejudice to the appellant. Id. at 129.

Length of delay

The majority analyzes this factor utilizing the seventy-one-day period that Schuber was in pretrial confinement in finding that the delay was not unreasonable on its face and that the Barker test therefore was not triggered. Schuber, __ M.J. at __ (19). Were we dealing only with a seventy-one-day delay, I might agree with the majority's analysis. However, as I would include the entire 138-day time period, our prior cases make it clear that a delay of that duration is sufficient to trigger the

5

full Barker analysis in an Article 10 context.[3]  See United

States v. Kossman, 38 M.J. 258, 261 (C.M.A. 1993) (holding that

"nothing in Article 10 that suggests that speedy-trial motions

could not succeed where a period under 90- or 120-days is

involved."); see also Mizgala, 61 M.J. at 128-29 (117-day delay

triggered the full Barker analysis); United States v. Cossio, 64

M.J. 254, 257 (C.A.A.F. 2007) (117 days); United States v.

Thompson, 68 M.J. 308, 312 (C.A.A.F. 2010) (145 days).

Reasons for the delay

At the trial level the Government argued that the initial

seventy-five-day delay was due to the "adjudicative process" and

the press of other business.  As to the period of delay after

referral, the Government argued that the delay was justified as

they had to wait for a particular expert from the Air Force Drug

Testing Laboratory.  After taking testimony on the speedy trial

motion, the military judge found that the Government had been

unconcerned with the multiple speedy trial requests in this

case.  The military judge noted that of the ten cases that were

completed while Schuber was in confinement, only one involved an

individual in pretrial confinement who had made a speedy trial

---

[3] The Court of Criminal Appeals also found that when "the
appellee has been in nearly continuous confinement and restraint
for 138 days and made a timely demand for a speedy trial, the
length of delay is sufficient to trigger the full Barker
inquiry.  United States v. Schuber, No. 2010-14 2010, slip op.
at 5 (A.F. Ct. Crim. App. Dec. 2, 2010) (unpublished).

request.  Noting that the Government had failed to notify the court of the pre-referral speedy trial requests, which reflected its lack of concern for processing the case in a timely manner, the military judge concluded that this was a commonplace urinalysis drug case that was factually "uncomplicated and unproblematic."  In this context I do not believe the military judge erred when he concluded that "in looking at the proceeding as a whole, the government did not expeditiously move this case along."

### Demand for a speedy trial

It is not disputed that Schuber made six demands for a speedy trial.  The Court of Criminal Appeals questioned the sincerity of the speedy trial requests as they were included as part of Schuber's discovery requests and therefore found that the defense's desire to move the case along was "debatable." Schuber, No. 2010-14, slip op. at 7.  In reaching this finding the lower court was making findings of fact, as it is permitted to do under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006). However, the principle stated in Cossio, 64 M.J. at 257, that a military judge "must be careful to restrict findings of fact to things, events, deeds or circumstances that 'actually exist' as distinguished from 'legal effect, consequence or interpretation'" is equally applicable to a Court of Criminal Appeals when it engages in its fact-finding function.  The lower

court discounted Schuber's requests for a speedy trial by speculating that the requests were somehow not serious. Schuber, No. 2010-14, slip op. at 7. However, the record reflects that the requests were made and without further evidence on the record, they must stand for what they are -- six requests for a speedy trial.

Prejudice

Barker explained that prejudice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." Barker, 407 U.S. at 532. Those three interests are: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. The Supreme Court noted that the most serious factor is the third, the possibility that the defense will be impaired by the delay. Id.

In the defense motion to dismiss, Schuber argued that he suffered anxiety and concern after missing the funerals of two close family members. The military judge found that though Schuber suffered "some prejudice" after missing the funerals of two family members and the anxiety of awaiting court-martial proceedings, he did not suffer prejudice "sufficient to violate the Sixth Amendment." Nevertheless, properly recognizing that Sixth Amendment speedy trial standards do not dictate whether

8

there has been an Article 10 speedy trial violation, the military judge went on to find a violation of Article 10.

As to the first Barker prejudice factor, it is clear that Schuber did not suffer oppressive incarceration, nor does he make that argument. As to the third Barker prejudice factor, whether the defense was impaired by the delay, Schuber concedes that he had not suffered "extensive prejudice to his defense" although he argues that he suffered "legitimate prejudice." In this case, as in Mizgala, there is "no indication that his preparation for trial, defense evidence, trial strategy, or ability to present witnesses . . . [was] compromised by the processing time in this case." Mizgala, 61 M.J. at 129.

In regard to the second prong, the question as to whether the anxiety Schuber suffered as a result of missing the funerals of family members constitutes sufficient prejudice for Article 10 purposes, presents a closer question. I agree with the military judge that Schuber did suffer some anxiety in this regard but also agree with his determination that the anxiety did not reach the level of Sixth Amendment prejudice. As we have noted, however, the Sixth Amendment speedy trial determination does not necessarily dictate the result in an Article 10 analysis and further inquiry is necessary.

Here the record reflects that the Government took steps to minimize Schuber's anxiety by granting his request for release

from pretrial confinement and placing him on base restriction, as well as granting his request for leave to attend his grandfather's funeral.  While Schuber was not released from confinement in time to make it to the funeral service, he was able to join his family in the days following the funeral.  In light of these accommodations by the Government to minimize Schuber's anxiety and concern, even under the more stringent Article 10 analysis, I do not believe that he suffered prejudice for Article 10 purposes.

While I would find that Schuber's restriction to base constituted "arrest" for purposes of Article 10, in balancing the Barker factors in an Article 10 context, I would find that they weigh in favor of the Government and would affirm the CCA's reversal of the military judge's ruling on the Article 10 violation.