# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, D.C. KING, T.P. BELSKY**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**EDMUND R. GALLEGOS**
**GUNNERY SERGEANT (E-7), U.S. MARINE CORPS**

**NMCCA 201300391**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 29 May 2013.
**Military Judge**: LtCol Nicole Hudspeth, USMC.
**Convening Authority**: Commander, United States Marine Corps Forces Command, Norfolk, VA.
**Staff Judge Advocate's Recommendation**: LtCol D.J. Bligh, USMC.
**For Appellant**: LT Jonathan Hawkins, JAGC, USN; LT David Dziengowski, JAGC, USN.
**For Appellee**:  Maj Crista D. Kraics, USMC.

**23 December 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

BELSKY, Judge:

A military judge, sitting as a general court-martial, convicted the appellant pursuant to his pleas of two specifications of conspiracy, one specification of wrongfully selling government property, one specification of wrongfully possessing machineguns, and one specification of wrongfully transporting machineguns through interstate or foreign commerce, in violation of Articles 81, 108, and 134, Uniform of Military

Justice, 10 U.S.C. §§ 881, 908, and 934. The adjudged sentence included three years' confinement, reduction to pay grade E-1, a dishonorable discharge, and a $10,000.00 fine, with an additional twelve months' confinement if the fine was not paid by 17 April 2014. The convening authority (CA) approved the sentence as adjudged and, pursuant to the terms of a pretrial agreement, suspended for a period of twelve months all confinement in excess of eighteen months.

On appeal, the appellant raises the following assignments of error:

> WHETHER APPELLANT'S SENTENCE IS DISPARATELY SEVERE COMPARED TO THE CLOSELY-RELATED CASES OF GYSGT CARSTENSEN, GYSGT LEONARD, 1STLT WARP, CAPT PUMP AND CAPT BROWN?

> WHETHER THE MILITARY JUDGE ERRED WHEN SHE DENIED APPELLANT'S MOTION TO DISMISS PURSUANT TO ARTICLE 10, UCMJ?[1]

Finding merit in his first assignment of error we will grant relief in our decretal paragraph. Following our corrective action, no error materially prejudicial to a substantial right of the appellant remains. Arts. 59(a) and 66(c), UCMJ.

## Background

The following facts are taken from the appellant's providence inquiry, and in the stipulation of fact entered into evidence as Prosecution Exhibit 1.

While deployed to Iraq, the appellant and Gunnery Sergeant (GySgt) Daniel Leonard, USMC, became acquaintances. During the course of that relationship, GySgt Leonard invited the appellant to join a scheme to obtain excess military property and illegally sell it for a profit through Internet sites such as eBay. The appellant agreed to join GySgt Leonard.

Through his assigned duties, GySgt Leonard continued to surreptitiously obtain military property, and gave a portion of the property to the appellant to sell. GySgt Leonard and the appellant also provided some of the property to Captain (Capt)

---

[1] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1992).

Christopher Brown, USMC, and Capt Donald Pump, USMC, for them to sell as well. In total, GySgt Leonard made approximately $85,000.00 from this scheme, the appellant made approximately $39,000.00, and Capt Brown profited approximately $30,000.00. Capt Pump actually sold little, if any, of the items, and investigators were able to retrieve much of the property given to him. However, Capt Pump played a pivotal role in the scheme by taking advantage of his position to enable acquisition of the excess military property.

In addition to wrongfully obtaining and selling military property, GySgt Leonard also solicited the appellant to help him secretly ship from Iraq to the United States 22 illegally obtained AK-47 machineguns. GySgt Leonard informed the appellant that he and a fellow Marine, GySgt Steven Carstensen, USMC, intended to ship the weapons to the U.S., and the appellant agreed to use his position as logistics chief to facilitate the shipments. The appellant's conduct in this scheme included ensuring that the weapons, hidden in shipping containers with false bottoms, were not discovered during customs inspections. Once the weapons were in the U.S., the appellant, at GySgt Leonard's request, delivered one weapon each to Capt Brown and First Lieutenant (1st Lt) Christopher Warp.

Based on this conduct, the CA referred charges against all the Marines involved, with the exception of GySgt Leonard, who was administratively separated with an other than honorable conditions discharge and faced possible prosecution in civilian federal court. However, the record of trial does not indicate whether civilian authorities ever actually prosecuted GySgt Leonard.

Capt Brown pled guilty at a general court martial to one specification of wrongfully selling military property, one specification of wrongfully possessing a machinegun, one specification of obstructing justice, and one specification of receiving stolen property. His adjudged sentence included a dismissal, confinement for twelve months, a $15,000.00 fine, and forfeiture of $1,000.00 pay per month for twelve months. The CA was obligated pursuant to a pretrial agreement to defer the adjudged and automatic forfeitures, and suspend the amount of the fine in excess of $10,000.

GySgt Carstensen pled guilty at a general court martial to one specification of conspiracy, one specification of wrongfully possessing machineguns, one specification of wrongfully transporting machineguns, two specifications of larceny, and

3

one specification of receiving stolen property.  His adjudged sentence included a bad-conduct discharge, confinement for nine months, and a reduction to pay grade E-1.

1st Lt Warp pled guilty at a general court martial to three specifications of violating Article 134, UCMJ.  His adjudged sentence included a dismissal, confinement for seventy days, and forfeiture of $1,000.00 pay per month for twelve months.  The CA was obligated pursuant to a pretrial agreement to disapprove the adjudged forfeitures, and defer and waive the automatic forfeitures.

Finally, Capt Pump pled guilty at a general court martial to one specification of dereliction of duty, and one specification of receiving stolen property.  His adjudged sentence included a dismissal, confinement for eighteen months, a $10,000.00 fine, and forfeiture of $2,500.00 pay per month for eighteen months.  The CA was obligated pursuant to a pretrial agreement to suspend the fine, defer and then waive and defer the automatic and adjudged forfeitures respectively, and suspend all confinement in excess of 180 days.

## Sentence Disparity

In his first assignment of error, the appellant alleges that his sentence is disproportionately severe compared to the sentences of his fellow Marines involved in the conduct in question.  He avers that disapproving the dishonorable discharge will remedy this error.

In general, we review the appropriateness of a sentence without reference or comparison to sentences in other cases. *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985).  We will not engage in comparison of specific cases "'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'"  *United States v. Lacy,* 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283) (additional citation omitted).  "Closely related" cases are those that involve offenses "similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994); *see also Lacy*, 50 M.J. at 288 (examples of closely related cases include co-actors in a common crime, servicemembers involved in a common or parallel scheme, or "some other direct nexus between the servicemembers whose sentences are sought to be compared").  The burden is upon the appellant to make the initial showing

4

that his case is closely related to another, *and* that the sentences are highly disparate. *Lacy*, 50 M.J. at 288. If the appellant meets this burden, the Government must then establish a rational basis for the disparity. *Id.*

In conducting this analysis it is important to note that "[s]entence comparison does not require sentence equation." *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001) (citations omitted). Additionally, co-conspirators are not entitled to equal sentences simply due to their status as co-conspirators. *See id.* at 261. Sentence disparity exists when a sentence exceeds "relative uniformity" or represents an "obvious miscarriage of justice or an abuse of discretion." *United States v. Swan*, 43 M.J. 788, 793-94 (N.M.Ct.Crim.App. 1995) (citations and internal quotation marks omitted). It is with these concepts in mind that we review the appellant's sentence.

In its answer, the Government concedes that the appellant's case is closely related to those of his fellow Marines. However, the Government alleges that the appellant is not entitled to relief since he has failed to demonstrate that the sentences in question are highly disparate. We disagree.

Of all the Marines involved, the appellant's adjudged confinement was the longest by two years, and he was the only Marine to suffer both an approved fine and unsuspended automatic forfeitures. Moreover, the appellant was the only enlisted Marine involved in the misconduct to receive a dishonorable discharge. In light of these facts, and given that the cases are closely related, we find that the appellant's sentence is highly disparate to the sentences of his fellow Marines.

Although we find the appellant's sentence highly disparate we will not grant relief so long as the Government provides a rational basis for the disparity. In its brief, the Government asks that we find a rational basis for the disparity based on a "presumption" that the military judge in each case carefully weighed all the evidence in mitigation, extenuation and aggravation and rendered an individualized and appropriate sentence. Government's Brief of 13 May 2014 at 12. We cannot apply such a presumption as doing so would improperly relieve the Government of its burden. *See Lacy*, 50 M.J. at 288 (stating that if the appellant meets his burden of showing a high disparity among closely related cases, or if the court raises the issue on its own motion, "then the Government must show that there is a rational basis for the disparity"). Additionally,

5

our review of the record as a whole, including the Government's brief, does not reveal a rational basis for the disparity.

The record of trial demonstrates that the appellant, while playing a significant role in both plans to sell military property and to transport the machineguns, was the most junior Marine involved in the misconduct, and did not become involved in either scheme, until solicited by two senior Marines while all were forward deployed to Iraq. Equally concerning is the record's silence on why GySgt Leonard – the recognized ringleader of both schemes - avoided military justice altogether. Based on all these facts, we conclude that the Government has failed to meet its burden of providing a rational basis for the appellant's highly disparate sentence. Accordingly, we will grant relief.

## Article 10, UCMJ

In a *Grostefon* submission, the appellant claims that the military judge erred in denying his motion to dismiss based on an alleged violation of Article 10, UCMJ. We disagree. We review *de novo* whether an appellant was denied his right to a speedy trial under Article 10, UCMJ. *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003).

Article 10, UCMJ, states that when a servicemember,

> [I]s placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him.

The Court of Appeals for the Armed Forces has explained that this provision "is specifically addressed to a particular harm, namely causing an accused to languish in confinement or arrest without knowing the charges against him and without bail." *United States v. Schuber*, 70 M.J. 181, 187 (C.A.A.F. 2011) (citation omitted). "[I]f the condition precedent is addressed — the accused is no longer confined without knowing the charges of which he is accused and without opportunity for bail — the purpose of Article 10, UCMJ, is vindicated." *Id.* This remains true even if the appellant is placed on restriction after release from confinement, so long as that restriction is not tantamount to arrest or confinement. *Id.*

In the present case, the appellant was placed in pretrial confinement on 14 April 2011. However, he was released from confinement nineteen days later, on 3 May 2011, and placed on

6

pretrial restriction where he remained until his court-martial held 17 May 2013. Although the appellant argued to the military judge that this period of restriction was tantamount to arrest or confinement, our review of the record convinces us that the military judge did not err in rejecting this argument. Thus, the purpose of Article 10, UCMJ, was "vindicated" in the appellant's case upon his release from confinement. *Id.*[2] Accordingly, this assignment of error is without merit.

### Conclusion

The findings are affirmed. However, we affirm only so much of the sentence so as to include a bad- conduct discharge, confinement for eighteen months, a $10,000.00 fine, and reduction to pay grade E-1.[3] The supplemental court-martial order will reflect that Capt Brown's adjudged sentence included a fine of $15,000.00 vice $5,000.00.

Senior Judge FISCHER and Judge KING concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[2] We also find that the nineteen days that the appellant did spend in pretrial confinement did not violate Article 10, UCMJ, as we do not find this delay unreasonable. *See Schuber*, 70 M.J. at 187-88.

[3] The staff judge advocate's recommendation demonstrates that the appellant paid his fine in full by 6 June 2013.