# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 TOREY R. PURDIN**
**United States Army, Appellant**

ARMY 20120277

Headquarters, U.S. Army Signal Center of Excellence and Fort Gordon
Stephen E. Castlen, Military Judge (arraignment)
Tiernan P. Dolan, Military Judge (trial)
Colonel John P. Carrell, Staff Judge Advocate

For Appellant: Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain J. Fred Ingram, JA (on brief).

For Appellee: Lieutenant Colonel James L. Varley, JA; Major Robert Rodrigues, JA; Captain Daniel M. Goldberg, JA (on brief).

12 September 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LIND, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of absence without leave, failure to obey a lawful order, possession of child pornography, and possession of obscene visual depictions of minors engaging in sexually explicit conduct, in violation of Articles 86, 92, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 886, 892, 934) (2006). The military judge sentenced appellant to a bad-conduct discharge and confinement for eighteen months. The convening authority approved the adjudged sentence and credited appellant with 236 days against the sentence to confinement.

PURDIN – ARMY 20120277

     This case is before our court for review under Article 66, UCMJ. On appeal, appellant assigns three errors, two of which merit discussion and one which merits relief.[1]

**INEFFECTIVE ASSISTANCE OF COUNSEL
FOR FAILURE TO RAISE MOTION TO DISMISS
PURSUANT TO ARTICLE 10, UCMJ**

*Facts & Procedural Background*

     Appellant was in advanced individual training (AIT) at Fort Gordon, Georgia. "Policy Letter 17: Privileges and Limitation for Soldiers in Training" dated 15 March 2011 [hereinafter "Policy Letter 17"] governed conduct for soldiers in training in appellant's brigade. When soldiers arrived at the unit from basic training, they began as phase IV soldiers. Phase IV soldiers remained in duty uniform unless sleeping, conducting physical training, participating in unit sports, or conducting designated work details. Use, possession, or purchase of alcohol or tobacco products was prohibited. Phase IV soldiers were not authorized to ride or drive in a rental car or privately owned vehicle and were not authorized off-post pass privileges. To progress to phase V status, soldiers were required to pass a knowledge exam; recite the Soldier's Creed; sing their branch song; pass a Class A uniform, wall locker, and room inspection; pass the Army Physical Fitness Test; demonstrate proper discipline; and pass all academic requirements. Soldiers had the opportunity to progress to phase V (no earlier than Week 3 of AIT) and then to phase V+ status (no earlier than week 11 of AIT). Each phase allowed soldiers additional privileges. Policy Letter 17 required phase V and V+ soldiers pending action under the UCMJ to "revert to, and remain in, phase IV status until final adjudication or withdrawal of the action."

<u>Appellant's First Trial[2]</u>

     Prior to 8 May 2011, appellant was in phase V+ status. Appellant had been under investigation for possession of child pornography for approximately one year and, during this time, had completed AIT. Appellant's company commander, Captain (CPT) SH, testified that on 9 May 2011 he preferred charges against

---

[1] We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they are without merit.

[2] *United States v. Private E2 Torey R. Purdin*, ARMY 20111074.

2

appellant and reverted appellant to Phase IV status in accordance with Policy Letter 17 until adjudication was complete.[3]

On 16 June 2011, appellant was notified that his Article 32, UCMJ, investigation was scheduled for 22 June 2011. On 17 June 2011, defense counsel requested a delay in the Article 32 investigation until 5 August 2011 in order to request a Rule for Courts-Martial [hereinafter R.C.M.] 706 sanity board of appellant anticipated to last three to seven weeks, and to investigate the case in preparation for the Article 32 investigation. At the same time, defense counsel submitted the request for the R.C.M. 706 inquiry. The Article 32 was re-scheduled to 5 August 2011. On 7 July 2011, the special court-martial convening authority ordered an R.C.M. 706 sanity board for appellant. On 2 August 2011, trial counsel requested additional delay of the Article 32 investigation for approximately one week pending completion of appellant's R.C.M. 706 sanity board.

On 8 August 2011, appellant told CPT SH he was going to leave and took a cab to the airport. The same day, the unit found appellant at the airport and placed him into pretrial confinement.

On 28 September 2011, appellant waived his Article 32 investigation and submitted an offer to plead guilty. On 30 September 2011, the convening authority approved the pretrial agreement and referred the charges. The same day, the parties also signed a stipulation of fact, and appellant was served with the charges. On 27 October 2011, appellant was arraigned. The parties and the military judge agreed to a trial date of 7 November 2011 with a mixed plea and judge-alone forum. Defense counsel advised the military judge he would be presenting motions for Article 13, UCMJ, and pretrial confinement credit. The military judge set suspense dates with motions due on 31 October 2011 and responses due 3 November 2011. Trial was held on 7 November 2011. The military judge found appellant's guilty pleas improvident, entered pleas of not guilty for appellant, and, after holding an R.C.M. 802 conference with counsel, set the following schedule without defense objection: 1 December 2011, government witness list due; 6 December 2011, government and defense motions, and defense witness list, pleas, and forum due; 9 December 2011, motion responses due; and 25-27 January 2012, trial. On 10 November 2011, the convening authority withdrew the charges, terminating the

---

[3] The charges were actually preferred on 1 June 2010. This original charge sheet included the same misconduct charged in Specifications 1-3 of Charge I of the current charge sheet (possession of child pornography and of obscene visual depictions of minors engaging in sexually explicit conduct).

court-martial, and withdrew from the offer to plead guilty and appellant's conditional waiver of rights under Article 32(b), UCMJ.[4]

## Appellant's Second Trial

On 10 November 2011, the convening authority preferred the charges on the current charge sheet. On 15 November 2011, appellant was notified that his Article 32, UCMJ, investigation was scheduled for 17 November 2011. On 16 November 2011, appellant waived his Article 32 investigation. On 23 November 2011, the new charges were referred and served on appellant. The same day, appellant submitted an offer to plead guilty to the convening authority. The charges included Specifications 1-3 of Charge I from the original charge sheet (Article 134, UCMJ) and added new charges of attempted desertion (Article 85, UCMJ), absence without leave terminated by apprehension (Article 86, UCMJ), and failure to obey a lawful order (Article 92, UCMJ). On 2 December 2011, appellant was arraigned. Following an R.C.M. 802 conference with counsel, the military judge set the following trial schedule without defense objection: 8 December 2011, government witnesses due; 24 January 2012, defense pleas, forum, witness list, and motions due; 30 January 2012, government motions and responses to defense motions due; and 12-14 March 2012, trial. On 19 December 2011, the convening authority rejected appellant's offer to plead guilty. The military judge subsequently scheduled an Article 39(a) session on 14 February 2012 to litigate motions.

## Appellate Proceedings

Appellant alleges trial defense counsel was ineffective for failing to file a motion to dismiss for speedy trial violation pursuant to Article 10, UCMJ. Specifically, appellant argues Article 10 "arrest" was triggered by the phase IV restrictions placed on him on 9 May 2011 and, in the alternative, Article 10 was triggered by his placement into pretrial confinement on 8 August 2011.

Appellant did not file an affidavit or statement under penalty of perjury alleging ineffective assistance of counsel. After appellant filed his brief, the government moved this court to order an affidavit from appellant's trial defense counsel addressing why he did not file a speedy trial motion pursuant to Article 10

---

[4] The convening authority's withdrawal states that: "This withdrawal of the charge and its specifications became necessary as the Military Judge could not accept [appellant's] plea of guilty during trial and [appellant's] failure to fulfill promises contained in the agreement to plead guilty." There is no evidence in the records of appellant's first or second trial that the convening authority dismissed the original charge sheet preferred on 1 June 2011.

or demand a speedy trial. As neither party referenced appellant's first trial in their filings,[5] this court denied the government's motion to compel an affidavit, ordered government appellate counsel to review the record of appellant's first trial prior to responding to appellant's speedy trial assignment of error, and ordered defense appellate counsel to review the record of appellant's first trial prior to filing any reply to the government's brief. The government filed a brief addressing the Article 10 assignment of error and did not renew its request for an affidavit from trial defense counsel.

### *Law*

*Strickland v. Washington*, 466 U.S. 668, 687 (1984), established a two- part test for ineffective assistance of counsel: an appellant must show both deficient performance and prejudice from the deficiency. When a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion to dismiss for violation of appellant's speedy trial right pursuant to Article 10, UCMJ, an appellant must demonstrate that he would prevail on appeal. *United States v. Tippit*, 65 M.J. 69, 81 (C.A.A.F. 2007).

Article 10, UCMJ, provides: "When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to

---

[5] The discussion to R.C.M. 604(b) provides: "When charges which have been withdrawn from a court-martial are referred to another court-martial, the reasons for the withdrawal and later referral should be included in the record of the later court-martial, if the later referral is more onerous to the accused."

In this case, the later referral was more onerous to appellant. However, the second record of trial—to include the allied papers—contains only one passing reference to the fact that there was a first trial: a comment by the military judge to appellant during the forum selection colloquy that "at our last session you elected to go judge alone and plead guilty. That didn't work out which had the effect of vacating your election to go judge alone."

Even had the second referral not been more onerous, the government should have clearly referenced in the second record of trial that there was a prior trial involving some or all of the charges. This puts all parties at trial and on appeal on notice of the prior court-martial. This notice could be accomplished by attaching the withdrawal (and/or dismissal) to the subsequent record as an appellate exhibit and by the government announcing there was a prior trial during arraignment in the subsequent trial.

inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him."

Article 10 requires the government to exercise reasonable diligence in bringing appellant to trial. "Short periods of inactivity are not fatal to an otherwise active prosecution." *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005). Article 10 speedy trial claims balance the following factors: (1) length of the delay; (2) reasons for the delay: (3) whether appellant made a demand for speedy trial; and (4) prejudice to appellant. *Id.* at 129 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In balancing the factors, we look to "the proceeding as a whole . . . [t]he essential ingredient is orderly expedition and not mere speed." *Id.* (citation and internal quotation marks omitted). Considerations of factors (2)-(4) are required only when the length of the delay is facially unreasonable. *Schuber*, 70 M.J. at 188. Circumstances to consider in analyzing whether a period of delay is facially unreasonable include: "the seriousness of the offense, the complexity of the case, and the availability of proof." *Id.* (citing *Barker*, 407 U.S. at 530-31 & n.31). Other factors to consider—relevant to the purpose of Article 10 "to prevent an accused from languishing in prison without notice of the charges and opportunity for bail"—include "whether [a]ppellant was informed of the accusations against him, whether the [g]overnment complied with procedures relating to pretrial confinement, and whether the [g]overnment was responsive to requests for reconsideration of pretrial confinement." *Id.* Prejudice under Article 10 is assessed by considering the interests Article 10 was enacted to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *United States v. Wilson*, 72 M.J. 347, 353 (C.A.A.F. 2013) (quoting *Mizgala*, 61 M.J. at 129).

### *Analysis*

We conclude that there is no likelihood appellant would have prevailed if a motion to dismiss for speedy trial violation under Article 10, UCMJ, was raised and litigated at trial whether measured from 8 August 2011 (the date appellant was placed in pretrial confinement) or 9 May 2011 (the date CPT SH testified he ordered appellant reverted from phase V+ to phase IV status).

The record reveals a period of 219 days from 8 August 2011 to the presentation of evidence in appellant's second trial on 14 March 2012.[6] On 30 September 2011 (53 days after appellant was placed in pretrial confinement), the

---

[6] *See United States v. Cooper*, 58 M.J. 54, 59-60 (C.A.A.F. 2003) (holding that "[o]n its face . . . Article 10 seems to impose on the [g]overnment a duty that extends beyond arraignment to at least the taking of evidence.").

government referred appellant's case to trial, approved appellant's offer to plead guilty, and entered into a stipulation of fact with appellant. On 27 October 2011 (80 days after appellant was placed in pretrial confinement), appellant was arraigned. After consulting with the parties, the military judge scheduled trial for 7 November 2011 without defense objection (91 days after appellant was placed in pretrial confinement).[7] This should have been the end of the trial, however, the military judge did not find appellant provident to his pleas. As a result, the military judge entered findings of not guilty for appellant and, after consultation with the parties, scheduled appellant's contested trial for 25-27 January 2012 (170 days after appellant was placed in pretrial confinement). The trial schedule included time for both sides to prepare motions and responses and was not objected to by either side. On 10 November 2011 (94 days after appellant was placed in pretrial confinement), the convening authority withdrew the original charge sheet and preferred the current charge sheet containing additional charges.

The current charges against appellant were referred for his second trial on 23 November 2011 (13 days after preferral of the current charges and 107 days after appellant was placed in pretrial confinement). Appellant was arraigned on 2 December 2011 (22 days after preferral of the current charges and 116 days after appellant was placed in pretrial confinement). Once again, after consultation with the parties and without defense objection, the military judge set trial for 12-14 March 2012 with a schedule for filing of pretrial motions and responses.[8] Other than a 14 February 2012 Article 39(a) session added to litigate pretrial motions, the trial schedule remained intact and the trial was held on 14 March 2012 (125 days after preferral of the current charges and 219 days after appellant was placed in pretrial confinement).

We assume the length of the delay from appellant's placement into pretrial confinement on 8 August 2011 through trial on 14 March 2013 was facially unreasonable to trigger analysis of the remaining *Barker* factors. We proceed then to the reasons for the delay and prejudice.[9]

---

[7] The period between arraignment and trial allowed defense counsel to prepare an Article 13 motion and the government to respond.

[8] Trial defense counsel filed the following motions in his second trial: bill of particulars, dismiss for failure to state an offense, compel discovery, compel witnesses, judicial notice, confinement credit, and unreasonable multiplication of charges. The government filed motions for judicial notice.

[9] As this is an ineffective assistance of counsel claim against trial defense counsel for failing to raise a motion to dismiss under Article 10, we do not hold appellant's failure to demand speedy trial against him in our analysis.

While appellant was pending the charges preferred on 1 June 2011, he committed additional misconduct culminating in his pretrial confinement on 8 August 2011. This misconduct resulted in additional charges preferred against appellant (these charges now form the basis of the Specifications of Charges II, III, and IV on the current charge sheet). The record for the first trial shows trial and defense counsel engaging in pretrial negotiation that resulted in the parties reaching a pretrial agreement that did not add additional charges to the original charge sheet. This negotiation resulted in appellant waiving his Article 32 investigation on 28 September 2011 and referral of charges and pretrial agreement approval on 30 September 2011. Under the facts of this case, we find this a reasonable period for pretrial negotiation with a favorable result to appellant in that the pretrial agreement did not include additional charges. Finally, the only reason the delay in appellant's first trial exceeded 91 days was because appellant was not provident to his pleas on the original charges. The trial schedule from preferral to the end of each of appellant's trials shows the government proceeding with due diligence and the military judge proceeding expeditiously with appropriate attention to affording time for the parties to prepare and litigate pretrial motions. As such, the record reveals no good tactical reason for appellant's trial defense counsel to object to either the trial schedule or to demand speedy trial.

With respect to prejudice, appellant alleges he was prejudiced by the delay because he was assaulted by another inmate on 6 September 2012. This is not the "prejudice" Article 10 was enacted to prevent. *See Wilson*, 72 M.J. at 353-54. Neither record of appellant's first or second trial demonstrates prejudice to appellant from the delay.[10]

We need not determine whether appellant's reversion from phase V+ to phase IV status was as "arrest," triggering Article 10, UCMJ.[11] We reach the same result if

---

[10] Appellant alleges that failure by defense counsel to file an Article 10 motion prevented any prejudice from being developed on the record. It is appellant's burden to show the viability of an Article 10 motion to prevail on appeal. *Tippit*, 65 M.J. at 81. He has not done so.

[11] Article 9(a), UCMJ, defines "[a]rrest" as "the restraint of a person by an order, not imposed as a punishment for an offense, directing him to remain within certain specified limits." Our superior court has recognized that "not every geographic restriction amounts to arrest." *United States v. Schuber*, 70 M.J. 181, 185 (C.A.A.F. 2011). Historically, an arrest involved (1) confinement to one's "military living space" and (2) an officer's surrender of sword, signifying suspension of command authority and the performance of military duties. *Id.* at 187 (citation omitted). Whether a restriction amounts to an arrest includes "consideration of such factors as

(continued . . .)

8

we were to calculate the delay from 9 May 2011 when CPT SH testified he reverted appellant from phase V+ to phase IV status. In viewing the record from 9 May 2011 through 8 August 2011, we find the government proceeded with reasonable diligence. The Article 32 investigation was originally scheduled for 22 June 2012. The investigation was delayed pursuant to trial defense counsel's request for an R.C.M. 706 sanity board for appellant and to investigate the case. Trial defense counsel's reasons for delay were valid and the government proceeded with reasonable diligence in accommodating trial defense counsel's request for delay and in requesting additional delay pending completion of the R.C.M. 706 sanity board. Finally, as we described above, we find the record demonstrates no prejudice to appellant pursuant to Article 10 for any delay between 9 May 2011 and 8 August 2011.

## LEGAL SUFFICIENCY OF THE
## SPECIFICATION OF CHARGE IV
## (VIOLATION OF A LAWFUL ORDER)

We conduct a de novo review of issues of legal sufficiency. *United States v.Winckelmann*, 70 M.J. 403, 406 (C.A.A.F. 2011). The test for legal sufficiency is whether, considering the evidence "in the light most favorable to the [g]overnment, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The Specification of Charge IV alleged appellant failed to obey "paragraph 6a.(4) of 15th Regimental Signal Brigade Policy Letter 17, dated 15 March 2011 . . . by wrongfully possessing and using a tobacco product, said product being a cigarette." The government's theory at trial was that appellant's company commander, CPT SH, witnessed appellant in the unit smoke pit smoking a cigarette.

As the government concedes on appeal, CPT SH testified only that he saw appellant in the smoke pit but not that he witnessed appellant holding or smoking a cigarette. We conclude the evidence is legally insufficient to support appellant's conviction of Specification of Charge IV and will take corrective action in our decretal paragraph.

---

(. . . continued)

the geographic limits of constraint, the extent of sign-in requirements, whether restriction is performed with or without escort, and whether regular military duties are performed." *Id.*

## CONCLUSION

The findings of guilty of Charge IV and its specification are set aside and dismissed.  The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the error noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we are confident the military judge would have adjudged the same sentence.

In evaluating the *Winckelmann* factors, we find there is no dramatic change to the sentencing landscape.  *See Winckelmann*, 73 M.J. at 15-16.  The maximum sentence to confinement is reduced from 20 years and 7 months to 20 years and 1 month.  *See MCM*, pt. IV, ¶ 16.e(2).  The gravamen of appellant's misconduct is the more serious offenses of possessing child pornography and obscene visual depictions of children engaged in sexually explicit conduct that was prejudicial to the good order and discipline of the armed forces and of a nature to bring discredit upon the armed forces.  *See Winckelmann*, 73 M.J. at 16.  Child pornography, obscenity, and the additional absence without leave convictions are commonly reviewed by this court.  *See id.*  We also note that appellant was sentenced by a military judge.  *See id.*

The sentence is AFFIRMED.  All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Judge KRAUSS and Judge PENLAND concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court

10